```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
TIME WARNER CABLE OF NEW YORK CITY, a
division of TIME WARNER ENTERTAINMENT
COMPANY, L.P.,

                    Plaintiff,
                                          REPORT AND
                                          RECOMMENDATION
                                          96 CV 4362 (RJD)
                                          (JLC)
          - against -


JOSE AREVALO, et al.,

                    Defendants.
-----------------------------------X
```

APPEARANCES:
DANIEL J. LEFKOWITZ, ESQ.
350 Jericho Turnpike
Jericho, New York 11753
By: Shaun K. Hogan
for Plaintiff

NON-APPEARANCE, PRO SE:
Deborah Goode
18317 Babylon Ave.
Jamaica, New York 11412

Sandra Taylor
11045 160th St.
Jamaica, New York 11433

CADEN, United States Magistrate Judge:

On September 4, 1996, plaintiff Time Warner Cable of New York City ("TWCNYC" or "plaintiff"), a division of Time Warner Entertainment Company, L.P. commenced the instant action. Defendants Deborah Goode ("Goode") and Sandra Taylor ("Taylor") (collectively "defendants") were served with copies of the summons and complaint on September 14, 1996.

Defendants failed to file an answer or otherwise move against the complaint, although plaintiff's attorney notified them in writing of their default and plaintiff's intention to seek a default judgment against them. As a result of plaintiff's motion, United States District Judge Raymond J. Dearie entered a default judgment against defendants and referred this case to me to report and recommend on the issue of damages. This court thereafter directed plaintiff to file submissions in support of its request for an award of damages, attorney's fees and costs. The basis of plaintiff's claim is set forth in the affidavit of Thomas Allen, the Director of Signal Security for plaintiff.

Despite having been served with copies of plaintiff's submissions, defendants have still not responded or otherwise appeared in this action.

For the reasons set forth below, the undersigned respectfully recommends that plaintiff be awarded damages, including costs and reasonable attorney's fees in the amount of $9,002.00 from defendant Goode and $16,922.00 from defendant Taylor.

## Background

Time Warner Cable operates a cable television system in parts of Queens and Kings counties, New York pursuant to franchises awarded by the City of New York which authorize it

to operate and maintain said cable television system. (Allen Aff. ¶ 2.) In order to secure its product, TWCNYC encodes or scrambles its cable television programming services and provides each subscriber with a converter which is programmed or "addressed"[1] to decode only those programming services which the customer has purchased and is authorized to receive. (Allen Aff. ¶¶ 8-10.) In such manner, TWCNYC prevents the unauthorized receipt of its cable television programming services and accurately bills its customers for the programming services which they receive. Id.

Goode and Taylor became subscribers of TWCNYC's programming services on August 7, 1993 and May 17, 1991, respectively. (Allen Aff. ¶¶ 20, 21.) On May 13, 1996, defendants each made service calls to TWCNYC. When the TWCNYC technicians serviced defendants' respective residences, the technicians observed that the TWCNYC converter-decoder boxes had been altered. Consequently, the devices were retrieved and subsequently tested at TWCNYC's facilities. The tests revealed that the devices had been

---

[1] Addressability is the link of communication between the cable operator's central computer and a converter-descrambler utilized by a cable subscriber to access cable programming. The feature of addressability enables cable operators to authorize reception and billing of Pay-Per-View programs and to upgrade or downgrade subscribers' authorized levels of cable services by issuing a command to that device to either begin or stop decoding a particular program service.

P-049

tampered with to enable its users to descramble and steal the full range of TWCNYC's cable television programming services, including premium and Pay-Per-View programming. (Allen Aff. ¶ 19.) Plaintiff thereafter commenced this action against Goode and Taylor alleging that they violated 47 U.S.C. §§ 553(a) and 605(a).

## Discussion

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See, e.g., Greyhound Exhibit-Group, Inc. v. E.L.U.L. Realty Corp, 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 113 S.Ct. 1049 (1993); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973). Here, the complaint alleges that defendants illegally used a modified or "pirate" descrambling device or other equipment to descramble and steal plaintiff's programming services. The court must determine whether plaintiff is, therefore, entitled to relief under 47 U.S.C.§§ 553(c) and 605(a).

Section 553 was enacted as part of the Cable Communications Policy Act of 1984, Pub. L. No. 98-549, 98 Stat. 2779 et seq., and was specifically intended to deal with the growing problem of theft of cable service. International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1003

4

(2d Cir. 1993) ("Sykes I"). Section 553(a)(1) provides in pertinent part:

> No person shall intercept or receive ... any communications service over a cable system, unless specifically authorized to do so by a cable operator.

47 U.S.C. § 553(a)(1). Section 553 has uniformly been held to apply in circumstances where, as here, a defendant uses a decoder device for unauthorized interception and reception of cable television programming services. See e.g. American Cablevision of Queens, Inc. v. McGinn, 817 F. Supp. 317 (E.D.N.Y. 1993) (Azrack, M.J.); Cablevision Systems Corp. v. Maxie's North Shore Deli Corp., No. 88-CV-2834, 1991 WL 58350 (E.D.N.Y. 1991) (Chrein, M.J.); Cablevision Systems Corp. v. DePalma, No. 87-CV-3528, 1989 WL 8165 (E.D.N.Y. 1991) (Caden, M.J.). Based upon the allegations in the complaint, plaintiff has demonstrated a basis for recovery of damages under section 553.

The Second Circuit has held that section 605 also applies to the theft of cable television programming services. International Cablevision, Inc. v. Sykes and Noel, 75 F.3d 123 (2d Cir. 1996) ("Sykes II"). As noted in Sykes II, while section 553 specifically addresses cable theft, its legislative history indicates that at the time it was enacted, Congress intended that section 605 would continue to apply to the theft of cable television services, stating as

5

P-049

follows:

> Nothing in this section [553] is intended to affect the applicability of existing 605 to the theft of cable service, or any other remedies available under existing law for the theft of service.

Sykes II, 75 F.3d at 132, citing H.R. No. 98-934, 98th Cong. 2d. Sec. 83, 84 (1984) reprinted in 1984 U.S.C.C.A.N. at 4720.

Some judges in this court have found that both sections apply to conduct such as defendant's conduct herein. See, e.g., Cablevision Systems Corp. v. Maxie's North Shore Deli Corp., No. 88-CV-2834, 1991 WL 58350 (E.D.N.Y. 1991) (Chrein, M.J.); Cablevision Systems Corp. v. DePalma, No. 87-CV-3528 (JLC), 1989 WL 8165 (E.D.N.Y. 1991) (Caden, M.J.); American Cablevision of Queens v. McGinn, 817 F. Supp. 317 (E.D.N.Y. 1993) (Azrack, M.J.). Thus, plaintiff's complaint adequately alleges that it is entitled to relief under section 605. However, plaintiff may recover under only one of those sections. See, e.g., American Cablevision, 817 F. Supp. at 320.

Section 553(c)(3)(A)(ii) authorizes recovery of statutory damages in any amount between $250.00 and $10,000.00 for each violation thereof. Under section 553(c)(3)(B), a court is authorized to augment the amount of statutory damages awarded under section 553(c)(3)(A)(ii) by

6

any amount up to $50,000.00 for each violation if the court finds that defendant's violation(s) were committed willfully and for purposes of commercial advantage or private financial gain. Id. Alternatively, section 605(e)(3)(C)(i)(II) authorizes recovery of statutory damages in any amount between $1,000.00 and $10,000.00 for each violation thereof. Under section 605(e)(3)(C)(ii), a court is authorized to augment the amount of statutory damages awarded under section 605(e)(3)(C)(i)(II) by any amount up to $100,000.00 for each violation if the court finds that the defendants' violation(s) were committed willfully and for purposes of direct or indirect commercial advantage or private financial gain. Id.

Since the range of damages in this case are sufficient under section 553(c) to redress plaintiff's statutory rights, this court recommends that all damages herein be awarded under those sections and thus declines to further analyze plaintiff's claim for relief under section 605. The court must next consider the appropriate measure of damages to be awarded to plaintiff under section 553(c). Although defendants, by their default, are deemed to have admitted all of the well-pleaded allegations pertaining to liability, plaintiff must still provide evidence that substantiates the amount of damages suffered. It is within the court's

7

discretion to determine whether that burden has been met. See, e.g., Flaks v. Koegal, 504 F.2d 702, 707 (2d Cir. 1974); Meehan v. Snow, 494 F. Supp. 690, 695 (S.D.N.Y. 1980).

Section 553(c)(3)(A)(ii) provides that the party aggrieved may recover "statutory damages for all violations involved in the action, in a sum not less than $250.00 or more than $10,000.00 as the court considers just." Id. The term "all violations" means that recovery within the statutory range is available for each violation of the statute. See, Time Warner Cable of New York City v. U.S. Cable T.V., Inc., 920 F. Supp. 321, 328-29 (E.D.N.Y. 1996); Time Warner Cable of New York City v. Freedom Electronics, Inc., 897 F. Supp. 1454, 1459 (S.D. Fla. 1995). Any other interpretation would cause an aggrieved party to file a separate action for each violation by a defendant in order to recover the maximum damages. In light of the fact that TWCNYC's claims are based on each defendants use of one modified device, defendants will be treated as having each committed one violation.

Based on the circumstances of this case, the court recommends that plaintiff recover $9,002.00 from defendant Goode and $16,922.00 from defendant Taylor for defendants violation of section 553. This amount reflects the approximate amount the defendants would have paid for premium

8

P-049

cable, as well as Pay-Per-View events,[2] the cost of the converter-decoder boxes, and reasonable attorney's fees. As a result of Goode and Taylor's default, discovery as to how long each used the tampered converter-decoder boxes was hindered. Therefore, this court will compute damages, as if defendants began using the tampered converter-decoder boxes from the date each became a subscriber and ending the date the boxes were retrieved by TWCNYC. This court has determined that the approximate cost of the programming services the defendants enjoyed was $120.00 per month. As defendants will be held accountable for the damages done to the converter-decoders, the court has valued them at $175.00 each.

The approximate amount that would have been paid is then doubled because the court finds that the doubling of plaintiff's damage award is justified due to the lengthy period of time that each defendant used the altered devices. This lengthy period of time makes it apparent that defendants' violation of section 553 was willfully committed and for purposes of private financial gain. Therefore, the court in its discretion awards additional damages under section 553(c)(3)(B).

---

[2] The court will not address how many Pay-Per-View events were accessible to defendant.

Section 553(c)(2)(C) authorizes a court to award to a "prevailing aggrieved party" the costs and reasonable attorneys' fees incurred in prosecuting its claims to judgment. Id. The plaintiff's supporting affidavit details the costs and attorney's fees plaintiff incurred in commencing the action and obtaining the default judgment against defendants. The court, having reviewed said affidavit and having determined that plaintiff's costs and attorney's fees as stated therein are reasonable, recommends that plaintiff be awarded a total of $1,814.00 in costs and attorneys' fees in addition to its damage award. Consequently, each defendant will be ordered to pay fifty percent of $1,814.00.

Defendant Goode became a subscriber of TWCNYC's programming services on August 7, 1993, and the converter-decoder that provided her with all of TWCNYC's services was retrieved on May 13, 1996. (Allen Aff. ¶ 20.) Therefore, Goode was a subscriber for thirty-three months. Thirty-three multiplied by $120.00, the approximate cost of premium cable and Pay-Per-View events, is $3,960.00. This sum of the programming services is doubled to $7,920.00. In addition to the cost of service, plaintiff is entitled to $175.00, the cost of the converter-decoder box, that is now useless to TWCNYC and fifty percent of attorney's fees, $907.00. (Allen

10

Aff. ¶ 26.) Therefore, the total in damages that Goode should be ordered to pay plaintiff is $9,002.00.

Defendant Taylor became a subscriber of TWCNYC's programming services on May 17, 1991 and the converter-decoder that provided her with all of TWCNYC's services was retrieved on May 13, 1996. (Allen Aff. ¶ 21.) Taylor has been a subscriber for sixty months. When sixty is multiplied by $120.00, the approximate cost of premium cable and Pay-Per View events, Taylor owes $7,920.00 for programming services. The $7,920.00 is then doubled to $15,840.00. In addition to the cost of service, plaintiff is entitled to $175.00, the cost of the converter-decoder box and fifty percent of plaintiff attorney's fees, $907.00. (Allen Aff. ¶ 26.) The total in damages that defendant Taylor should be ordered to pay plaintiff is $16,922.00.

P-049

## Conclusion

For the foregoing reasons, it is respectfully recommended that judgment be entered against defendant Goode in the amount of $9002.00 and against defendant Taylor in the amount of $16,922.00. Copies of this Report and Recommendation have been forwarded to all parties.

Objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days to preserve appellate review. See 28 U.S.C. § 636 (b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; see also, Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully submitted,

JOHN L. CADEN
United States Magistrate Judge
Eastern District of New York

Dated: Brooklyn, New York
January 29 1999

P-049